J. H. VICH, v. WATTS & FOOTE, C. D. WATTS, and S. C. FOOTE, Appellants.

**Partnership:** EVIDENCE. Where there was evidence in a suit between real estate agents for a division of commissions, tending to show a partnership between defendants at about the time the agreement to pay plaintiff part of the commission was made, evidence that defendants each received mail addressed to them in the partnership name at about that time was competent.

**Evidence:** CONTRADICTORY STATEMENTS. Where a son of one of the parties to a real estate exchange testified that he never listed the land with plaintiff for sale or exchange as the agent of his father, a letter written by him in which he stated that if he was to exchange the land through others he would have to look to them for his commission and that one of the other parties had informed him that he would settle with plaintiff, was admissible in contradiction of his testimony that plaintiff had no authority from him to make an exchange.

**Agency:** DIVISION OF COMMISSIONS. Where defendants were compelled in effecting an exchange of land to include other property not contemplated when they agreed with plaintiff to divide the commission, plaintiff was not entitled to one-half the entire commission, but only a proportionate amount.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

TUESDAY, JUNE 25, 1912.

SUIT to recover part of the commission received by the defendants for the exchange of lands. Trial to a jury

and verdict and judgment for the plaintiff. The defendants appeal.—*Reversed.*

*John M. Galvin* and *C. E. Swanson* for appellants.

*Saunders & Stuart* for appellee.

SHERWIN, J.—The plaintiff claimed to have put the defendants in touch with J. H. Mickey, the owner of a ranch in Nebraska, under an agreement that he should receive one-half of the commission received by the defendants for effecting an exchange of the Mickey land for the Talbott farm in Iowa. The defendants brought about the exchange of the ranch in question and other lands owned by Mickey for the Talbott farm, and received from Mickey $1,200 commission for their services. The plaintiff sued for, and recovered, one-half thereof with interest.

I. Over the objection of the defendants the plaintiff was permitted to prove that mail addressed to Watts & Foote and Foote & Watts was received at the post office at Crescent, where both parties lived, and was delivered to and taken from the office by each of the defendants at different times shortly after the 17th day of March, 1906; that being about the date of the contract relied upon by the plaintiff. There was evidence tending to show that the defendants were partners in the real estate business at the time the alleged contract was made, and we think the testimony was properly received as tending to corroborate the other evidence on the subject. The postmaster testified that mail so addressed was received at his office during the first half of the year 1906, but was unable to give dates of such receipts. He said, however, on cross-examination that he was not sure that any such mail had been received before the 1st of April. But, if it be conceded that April 1st was the date of its first receipt, that was so near the date of the con-

*1. PARTNERSHIP: evidence.*

tract as to make the testimony admissible for what it was worth. It tended to show acts of the parties themselves which indicated that a partnership actually existed when the contract was made.

II. The defendants used as a witness E. S. Mickey, a son of the owner of the Nebraska land, and he testified that he, as the agent of his father, had never listed the land in question with the plaintiff for sale or exchange, and that plaintiff had no authority to sell or exchange the same, or to employ others to do so. To rebut this testimony, the plaintiff offered, and it was received over the defendants' objections, a letter written to him by said E. S. Mickey after a contract for the exchange of the lands had been made, in which Mickey said: "In reply to your letter . . . will say that if we make a trade through Watts and Foote, we will have to settle with them for the commission. Mr. Watts informs me that he will settle with you." We think the letter competent as tending, in some degree, to show that Mickey was mistaken when he testified that plaintiff had received no authority from him to find a medium for the exchange of his father's Nebraska land.

2. EVIDENCE:
contradictory
statements.

III. The deal that was finally made by the defendants for Mickey included a large tract of land in addition to the ranch that plaintiff claimed to have for exchange, and also some personal property. It clearly appears from the record that the exchange could not have been effected without including this additional land and the personal property, and the plaintiff's only claim was for one-half of the commission received for the exchange of the ranch, which contained about 1,440 acres of land. The commission was paid for effecting an exchange of the 1,440-acre ranch and at least 960 acres of land in addition thereto, which was entirely separate and apart from the ranch. The court instructed that, if the plaintiff was entitled to recover at all, he was

3. AGENCY:
division of
commissions.

entitled to $600, one-half of the whole commission received. As we have seen, the commission of $1,200 was not paid for the exchange of the ranch alone. The most that the plaintiff could rightfully claim, in any event, would be a proportionate amount of the commission received by the defendants, and the court should have so advised the jury, notwithstanding the plaintiff's claim that he was entitled to one-half thereof. In view of our conclusion that the cause must be reversed on account of the instruction above noted, we need not further notice the claim of the appellants that the verdict was contrary to the instruction and to the evidence.

For error in the instruction relative to the amount of the plaintiff's recovery, the judgment is—*Reversed*.